No. 23-6020

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

KATHLEEN BUNT,
*Plaintiff-Appellant*,

v.

CLARKSVILLE-MONTGOMERY COUNTY,
TENNESSEE SCHOOL SYSTEM,
*Defendant-Appellee*.

On appeal from the United States District Court for the Middle District of
Tennessee, No. 3:21-cv-896 (The Honorable Aleta A. Trauger)
_____

**BRIEF OF PLAINTIFF-APPELLANT KATHLEEN BUNT**
_____

Hunter C. Branstetter
SHERRARD ROE VOIGT & HARBISON, PLC
150 3rd Avenue South, Suite 1100
Nashville, Tennessee 37201
Tel.: (615) 742-4200
Fax: (615) 742-4539
hbranstetter@srvhlaw.com

*Attorney for Plaintiff-Appellant*

ORAL ARGUMENT REQUESTED

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Sixth Circuit Rule 26.1 and congruent with the Disclosure of Corporate Affiliations and Financial Interest form previously filed on December 5, 2023, counsel for Plaintiff-Appellant Kathleen Bunt confirms that she is an individual, that she is not a corporation or a subsidiary or affiliate of any publicly owned corporation, and that no publicly traded corporation that is not a party to this appeal has a financial interest in the outcome.


DATED: February 23, 2024                     /s/ *Hunter C. Branstetter*
                                             Attorney for Plaintiff-Appellant

# Table of Contents

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ......................................................................... iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT ............................................ v

STATEMENT OF JURISDICTION........................................................................ 1

STATEMENT OF THE ISSUES.......................................................................... 2

STATEMENT OF THE CASE.......................................................................... 3

   I.   A Brief History of Ms. Bunt's Experience with and Previous Lawsuit against CMCSS ............................................................................................... 3

   II.   Ms. Bunt's EEOC charges in this lawsuit ............................................... 4

   III.   CMCSS's Retaliatory Actions against Ms. Bunt ...................................... 6

     a.   After the filed her January 2018 Charge, CMCSS subjected Ms. Bunt to increased and unusual scrutiny. ...................................................... 6

     b.   After she filed her January 2018 Charge, CMCSS refused to interview Ms. Bunt for three positions for which she was qualified and for which she had applied.............................................................................. 8

     c.   After she filed her January 2018 Charge, CMCSS denied Ms. Bunt long-term substitute teaching opportunities that had previously been available to her. 8

     d.   After she filed her EEOC charges, Ms. Bunt began having issues with CMCSS's phone system. ........................................................... 9

     e.   After her January 2018 EEOC charge, a CMCSS employee threatened Ms. Bunt's future with the school system. ............................................. 11

     f.   After she filed her EEOC charges, Ms. Bunt learned that she was being excluded from substitute positions at four school. ............................... 12

SUMMARY OF ARGUMENT ......................................................................... 16

STANDARD OF REVIEW ............................................................................. 17

ARGUMENT ........................................................................................... 19

   I.   Ms. Bunt indisputably engaged in protected conduct. .............................. 19

II.  Ms. Bunt's evidence at summary judgment could sufficiently established the second element of her prima facie retaliation claims by demonstrating that certain CMCSS personnel were aware of her protected conduct. ........................20

III.   CMCSS's numerous adverse actions against Ms. Bunt satisfy the third element of her prima facie retaliation claim. .........................................................21

IV.   Ms. Bunt's evidence at summary judgment sufficiently establish a causal connection between her protected conduct and CMCSS's adverse actions. ........22

CONCLUSION ......................................................................................................24

CERTIFICATE OF COMPLIANCE .......................................................................25

CERTIFICATE OF SERVICE ...............................................................................26

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .............27

# TABLE OF AUTHORITIES

**Supreme Court Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................................17

*Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ....................21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .............17

*Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463 (6th Cir. 2012) ........................22

**Federal Courts of Appeals Cases**

*Back v. Nestlé USA, Inc.*, 694 F.3d 571 (6th Cir. 2012) .........................................17

*Brown v. City of Franklin*, 430 F. App'x 382 (6th Cir. 2011)................................20

*Farhat v. Jopke*, 370 F.3d 580 (6th Cir. 2003) ......................................................18

*Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558 (6th Cir. 2019) ..........................19

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008) ..........................19

*Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009) ...................................17

*Randolph v. Ohio Dept. of Youth Services*, 453 F.3d 724, 737 (6th Cir. 2006) ......22

*Singfield v. Akron Metropolitan Hsg. Auth*, 389 F.3d 555 (6th Cir. 2004) .............22

**Federal District Court Cases and Orders**

*In re: Civil Appointments Panel*, Administrative Order No. 115 (M.D. Tenn. Dec. 19, 2016) ................................................................................................................4

**Statutes**

28 U.S.C. § 1291 ......................................................................................................1

28 U.S.C. § 1331 ......................................................................................................1

29 U.S.C. § 621 .............................................................................................. 1, 2, 3, 4

42 U.S.C. § 2000e .......................................................................................... 1, 2, 3, 4

**Rules**

Fed. R. App. P. 4 ......................................................................................................1

Fed. R. Civ. P. 56 ............................................................................................. 17, 20

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a) and 6th Cir. R. 34(a), Plaintiff-Appellant, Kathleen Bunt respectfully requests oral argument because this case involves Ms. Bunt's civil rights, addresses important matters of retaliation by Defendant-Appellee Clarksville-Montgomery County, Tennessee School System ("CMCSS") in response to her exercise of those rights, and is fact-intensive so that oral argument may be instructive to the Court.

## STATEMENT OF JURISDICTION

Because this action arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the district court had jurisdiction under 28 U.S.C. § 1331.

This Court has jurisdiction under 28 U.S.C. § 1291 because the district court's final Order dismissing this case with prejudice, R.48, PageID#994, and corresponding Entry of Judgment, R. 49, PageID#995, were entered on October 18, 2023 and Ms. Bunt thereafter timely filed her Fed. R. App. P. 4 Notice of Appeal on November 17, 2023, R. 50, PageID#996.

## STATEMENT OF THE ISSUES

Plaintiff-Appellant Kathleen Bunt contends that CMCSS violated the anti-retaliation provisions of Title VII and the ADEA by taking adverse employment actions against her in response to Ms. Bunt's engaging in the protected conduct of filing charges of discrimination against CMCSS with the Equal Employment Opportunity Commission ("EEOC"); the issues presented for review are whether the district court erred in granting summary judgment in favor of CMCSS when Ms. Bunt can provide circumstantial evidence to establish her retaliation claims and when genuine disputes of material fact exist regarding CMCSS's purported evidence in support of summary judgment.

## STATEMENT OF THE CASE

### I.    A Brief History of Ms. Bunt's Experience with and Previous Lawsuit against CMCSS

Ms. Bunt began working from CMCSS as a substitute teacher through a subcontractor in 2012 and has been subbing directly for CMCSS. R. 45-1, PageID#788. For the last several years and all while still substitute teaching for CMCSS, Ms. Bunt has been engaged in a multi-front effort to vindicate her rights and protect herself from discrimination or retaliation.

Ms. Bunt first filed a Charge of Discrimination with the EEOC on January 10, 2018, asserting that CMCSS discriminated against her based on her age in violation of the ADEA and retaliated against her in violation of Title VII for engaging in the protected conduct of pursuing a race-discrimination claim against a previous employer. *See* R. 1-4, PageID#67-68. Although the existence of this January 2018 Charge pertains to Ms. Bunt's retaliations claims in the instant appeal, the underlying claims are not relevant here because Ms. Bunt separately pursued the substantive claims related to this January 2018 Charge in a lawsuit that she filed after receiving her right to sue from the EEOC. R. 47, PageID#953 (taking judicial notice of this prior lawsuit); *see generally Bunt v. Clarksville Montgomery Cnty. School Sys.*, No. 3:19-cv-01013 (M.D. Tenn. Nov. 15, 2019) (the prior lawsuit).

Ms. Bunt initially pursued this prior lawsuit pro se until the district court appointed counsel for her. *See id.*; *see generally In re: Civil Appointments Panel*,

3

Administrative Order No. 115 (M.D. Tenn. Dec. 19, 2016). After Ms. Bunt's first appointed counsel withdrew, undersigned counsel's firm was appointed from the district court's civil appointments panel in March 2022 to represent Ms. Bunt not only in her prior lawsuit against CMCSS—which was thereafter settled, R. 47, PageID#953—but also in the instant case now on appeal, which at that point was awaiting the district court's ruling on CMCSS's fully briefed Motion to Dismiss. *See* R. 17, PageID#304.

## II.     Ms. Bunt's EEOC charges in this lawsuit

After Ms. Bunt filed her January 2018 Charge, she faced an essentially continuous cavalcade of adverse employment actions—actions that she had never been subject to before—that either individually or in toto amount to unlawful retaliation. Shortly after receiving the EEOC's Dismissal and Notice of Rights for her January 2018 Charge which later formed the basis of her prior suit, R. 1-4, PageID#70, Ms. Bunt filed a second EEOC Charge on August 26, 2019, alleging that CMCSS had been retaliating against her for filing the January 2018 Charge in violation of Title VII and the ADEA. *Id.* at PageID#71-72 (the August 2019 Charge). Discussed in detail below, CMCSS's retaliatory actions included denying Ms. Bunt interviews for open positions to which she had applied at CMCSS or marking her ineligible for positions at CMCSS for which Ms. Bunt was eligible, subjecting Ms. Bunt to increased and unusual scrutiny while teaching. *Id.*

4

Ms. Bunt filed another EEOC charge on July 9, 2021 (the "July 2021 Charge"), not only further cataloguing retaliation but also asserting that she had suffered age discrimination when she had been denied a teaching position at West Creek High School on December 18, 2019. *See* R. 47, PageID#953.

On December 2, 2021, Ms. Bunt filed the current lawsuit pro se, asserting age discrimination in violation of the ADEA, retaliation in violation of the ADEA and Title VII, and tortious interference with a prospective business relationship in violation of Tennessee common law. *See* R. 1, PageID#1-46. After counsel was appointed, the district court granted in part CMCSS's Motion to Dismiss, allowing Ms. Bunt's retaliation claims to proceed but dismissing her tortious interference claim and the claims arising out of CMCSS's failure to hire her for the West Creek High School position that were the subject of the July 2021 Charge. *See* R. 19, PageID#306-332.

### III.    CMCSS's Retaliatory Actions against Ms. Bunt

CMCSS has attempted to compartmentalize Ms. Bunt's claims into two discrete retaliation claims—one pertaining to her January 2018 Charge and the other pertaining to the July 2021 Charge, *see, e.g.*, R. 40, PageID#388-389. But as the district court correctly noted, *see* R. 47, PageID#978-979, this characterization overlooks the August 2019 Charge entirely and misapprehends the continuing and overlapping nature of Ms. Bunt's charges where, as pled, the August 2019 Charge alleges and establishes the retaliation that Ms. Bunt faced after filing the January 2018 Charge and then the July 2021 Charge covers the retaliatory conduct that Ms. Bunt continued to face after she filed her August 2019 Charge. Although Ms. Bunt vigorously disagrees with its ultimate conclusions as to the merits of her claims, the district court is absolutely correct that "the matter of which EEOC charge encompasses which retaliation claims is basically immaterial. The question is whether the plaintiff suffered retaliation for having engaged in protected activity." *Id.* at PageID#980. Ms. Bunt suffered such retaliation in several different ways.

### a.    After the filed her January 2018 Charge, CMCSS subjected Ms. Bunt to increased and unusual scrutiny.

The first of these retaliatory actions came in the form of dramatically increased scrutiny. After CMCSS was made aware of Ms. Bunt's January 2018 Charge on January 23, 2018, CMCSS placed Ms. Bunt under a microscope in a way she had never before experienced during tenure at CMCSS and in a way in which

she did not observe or understand her peers to be comparably scrutinized. Beginning on January 24, 2018 (i.e. the day after CMCSS had received her January 2018 Charge), Ms. Bunt had her second-ever classroom audit in her at-that-point-six-year tenure substitute teaching at CMCSS when Michael Tharpe, who at the time was an employment process coordinator at CMCSS, came to observe and evaluate her. *E.g.*, R. 42-2, PageID#642. Unusually, Mr. Tharpe was not employee or supervisor with the Substitute Office and thus not someone who would typically perform a classroom audit for a substitute teacher like Ms. Bunt. *Id.* Mr. Tharpe's audit, however, was the first of approximately 20 classroom audits/principal visits that Ms. Bunt underwent in the 18 months that followed—i.e. when Ms. Bunt filed her August 2019 Charge that noted this retaliation, among other issues. *Id.* at PageID#642-643; *see also* at R. 1-4, PageID#71-72.

These audit/observation visits were individually unexpected, generally rare, and singularly strange given the sheer quantity of these observations and given that Ms. Bunt was not always aware of the identity of all of the persons who came in to observe her. *Id.*; *see also* R. 45-2, PageID#839-843 (Ms. Bunt's contemporaneous handwritten notes tracking these principal/administrator observation visits). As Ms. Bunt testified in her deposition, these unusual and unexpected visits "continued and continued and continued" and made her "very uncomfortable." R. 42-1, PageID#486.

7

**b.  After she filed her January 2018 Charge, CMCSS refused to interview Ms. Bunt for three positions for which she was qualified and for which she had applied.**

In addition to CMCSS's placing Ms. Bunt under a microscope through repeated classroom observations, CMCSS took further adverse actions in response to her January 2018 EEOC charge by passing her over and denying her interviews for three teaching positions for which she was qualified and for which she had applied: a Related Arts position at West Creek Middle School in October 2018, a Career Exploration position at West Creek High School in March 2019, and a CTE Consulting position at Central Services South in June 2019. *See* R. 42-2, PageID#644; *see also* R. 42-1, PageID#514-518.

**c.  After she filed her January 2018 Charge, CMCSS denied Ms. Bunt long-term substitute teaching opportunities that had previously been available to her.**

In a similar vein and despite having previously held a number of long-term substitute teaching positions, after Ms. Bunt filed her January 2018 charge, CMCSS took a different approach to the way in which it hired and scheduled Ms. Bunt as a substitute teacher. Before Ms. Bunt's her January 2018 Charge, a teacher who was going to be absent would coordinate with Ms. Bunt and then one of them would contact the Substitute Office to explain and formally schedule the arrangement. After January 2018, however, this process was no longer available to Ms. Bunt—even when teachers themselves were requesting that Ms. Bunt sub for them. *See* R. 42-2, PageID#644-645; R. 1, PageID#13.

8

Ms. Bunt raised this issue repeatedly and in detail with CMCSS's Human Resources department in the spring of 2019, but these claims were seemingly not taken seriously and were not investigated according to CMCSS's own complaints procedure. *See* R. 45-2, PageID#834. Melissa Izatt, who was then CMCSS's Human Resource Coordinator, emailed Ms. Bunt in June 2019 claiming to have investigated, finding that there were not any issues with persons at CMCSS preventing her from being able to long-term substitute, and asking Ms. Bunt to provide any further evidence of her being impeded receiving long-term substitute positions. This investigation, however, was one-sided and incomplete because Ms. Izatt did not address any of the details that Ms. Bunt had previously provided to her. *See, e.g.*, R. 42-11, PageID#746-751 (Ms. Bunt's May 23, 2019 email correspondence to Melissa Izatt and Jeanine Johnson subject line "Threat to My Position as a Substitute Teacher"); *id. at* PageID#752-756 (Ms. Bunt's email correspondence of May 23, 2019 to Ms. Johnson, copying Ms. Izatt among others, "Fw: Long Term Subbing Job.").

> d. <u>After she filed her EEOC charges, Ms. Bunt began having issues with CMCSS's phone system.</u>

Despite almost always being listed as available, Ms. Bunt came to realize that the SmartFind phone system, which was used by CMCSS's substitute program to contact potential substitutes, was no longer calling her when there were open substitute positions for which she was available. Instead, Ms. Bunt had to

affirmatively call the system to check whether there might be positions available for her. *See* DE 42-2 at PageID#644-645.

CMCSS has attempted to rebut this complaint by asserting that Ms. Izatt reviewed the call logs for 2018-2019 (the time frame about which Ms. Bunt was then complaining)—which have not been produced—and found that they indicated that Ms. Bunt was called more than 200 times. Ms. Bunt, however, provided a sworn statements indicating that this did not occur. *See* R. 45-3, PageID#899. In response, CMCSS, through an initial June 2023 declaration, *see* R. 42-5, PageID#702-706, and subsequent supplemental August 2023 declaration, R.46-1, PageID#914-951, by employee Erica Christmas, attempt to overcome this factual issue by providing call logs from August 2019 through October 2019 (in the initial declaration) and through March 2021 (in the supplemental declaration).

Because the more extensive call logs were not filed until CMCSS's reply briefing, Ms. Bunt was only able to respond on the record to the initial August 2019 – October 2019 call logs, R. 42-5, PageID#706, but these are nevertheless rife with inaccuracies and impossibilities such as indicating that Ms. Bunt had accepted two different jobs on the same date (when Ms. Bunt was, in fact, actually on a different substitute assignment unrelated to either substitute job listed) or indicating that she had accepted a substitute job entirely different from the one she was actually doing. *See* R. or , thereby undercutting CMCSS's assertion that Ms. Bunt was receiving

10

calls through the substitute programs phone system as usual. *See* R. 45-1, PageID#803-805 (cataloguing many of the inaccuracies in the purported call log records).

    e.   <u>After her January 2018 EEOC charge, a CMCSS employee threatened Ms. Bunt's future with the school system.</u>

In May 2019, Shane Smith explicitly threatened Ms. Bunt's future ability to work at CMCSS. After being left without assistance substitute teaching a class known to be (and that Ms. Bunt had personally experienced to be) unruly and after the students had heard a bell indicating that they were dismissed before being told to remain in their classroom which caused unrest, Ms. Bunt called Shane Smith—who had previously been in the classroom—for assistance. Upon arrival, however, Mr. Smith opted instead to publicly castigate and humiliate Ms. Bunt before dismissing her and in so doing stated "you are going to jeopardize your future in this district." Given the change in tone Ms. Bunt had been experiencing and given the circumstances leading up to this conversation, Ms. Bunt understood this statement to at least partially reference to her January 2018 Charge. *See, e.g.*, R. 42-2, PageID#643-644; *see also* R. 45-3, PageID#898.

Although Ms. Bunt reported this Shane Smith incident to Theresa Muckleroy, Melissa Izatt, and Jeanine Johnson with CMCSS's HR department, to the best of her knowledge and despite attempts at follow-up, no follow-up investigation was conducted. This lack of follow up in compliance with CMCSS's own policy, *see* R.

45-2, PageID#832-838, was comparable to and occurred around the same time as the lack of proper investigation from CMCSS's HR department related to Ms. Bunt's complaints about the long-term sub position issue, *see* PageID#746-751 (Ms. Bunt's email correspondence to Melissa Izatt and Jeanine Johnson of May 23, 2019 regarding the Shane Smith incident titled "Threat to My Position as a Substitute Teacher"); *id.* at PageID#752-756 (Ms. Bunt's email correspondence of May 23, 2019 to Ms. Johnson, copying Ms. Izatt among others, "Fw: Long Term Subbing Job."). This lack of actual was part and parcel of the retaliation against Ms. Bunt in response to her January 2018 charge of discrimination. In both of these instances, instead of an investigation being conducted per CMCSS's policy, Ms. Bunt received emails from either Ms. Johnson or Ms. Izatt that only partially addressed portions of her complaints. *See* R. 45-3, PageI#900.

> f.  After she filed her EEOC charges, Ms. Bunt learned that she was being excluded from substitute positions at four school.

This retaliatory lack of investigation also percolated into the sixth category of adverse action Ms. Bunt suffered in retaliation for her filing EEOC Complaints— her being excluded from certain schools within CMCSS's system, namely Northeast Middle School ("NEMS"), Montgomery Central Middle School ("MCMS"), Kenwood High School ("KHS"), and West Creek High School ("WCHS"). *See* R.1, PageID#14, 17-19.

Although Ms. Bunt had already felt the palpable shift in the way in which CMCSS treated and approached her after she filed her January 2018 Charge, this adverse and hostile treatment became all the more apparent after July 2021 and included Ms. Bunt's learning or being told that—despite many favorable reviews from the teachers for whom she was substituting and despite receiving praise from various schools where she had substituted—her substitute file had had several complaints added to it. These negative additions occurred without Ms. Bunt's ever having been interviewed by or otherwise communicated to by CMCSS, and based on Ms. Bunt's knowledge, such negative additions are founded on incorrect facts or premises. *See* R. 42-2, PageID#645.

Further, Ms. Bunt learned that she was not being shown available substitute positions for at least four schools—West Creek High School, Kenwood High School, Montgomery Central Middle School, and North East Middle School. *Id.* at PageID#645-646. When Ms. Bunt inquired, she was told that she was being excluded from these schools—which was particularly unusual given that Ms. Bunt enough quality points to provide some autonomy in where she substituted by having substituted at CMCSS long enough and that Ms. Bunt had listed KHS and WCHS as preferred schools. Regarding these exclusions, Erica Christmas responded to Ms. bunt that she was being excluded from KHS "per K. Parker," from MCMS "per AP . . . due to language used," from NEMS for unknown reasons, and from WCHS "per

13

M. Slight" for unknown reasons. *See* R. 45-2, PageID#883. Ms. Christmas also notified Ms. Bunt that she would reach out to each of the schools to ask about removal from their exclusion lists and follow up, later telling Ms. Bunt in September 2021 that she was no longer on NEMS's or MCMS's exclusion lists. *Id.* at PageID# 883-896. Ms. Bunt's own lived experience, whoever, contradicts this assertion that these exclusions have been removed because she has only substituted at NEMS once, during exceptional circumstances, after supposedly being removed from the exclusion list. *See* R. 45-3, PageID#900; *see also* R. 45-2, PageID#897.

Regarding KHS, however, Ms. Bunt was initially told that her exclusion, which allegedly predated her July 2021 EEOC charge, would be revisited in August 2021. Yet in September 2021, she was still being excluded, and Ms. Christmas informed her that this exclusion would be permanent per the request of Kenwood's principal, James Bailey. Regarding WCMS, Ms. Bunt was also permanently excluded by its principal, Matthew Slight as of September 2021 in retaliation for her having filed her July 2021 Charge, which included specific allegations of age discrimination by Ms. Bunt against Mr. Slight himself. *See id.*

Like the retaliation that Ms. Bunt experienced through CMCSS's HR department after her January 2018 Charge, this response to her July 2021 EEOC charge continued to play out in the same way as Ms. Bunt reported these issue to her supervisor, Ms. Christmas in September 2021 who, in turn, forwarded Ms. Bunt's

complaint to Jeanine Johnson. Ms. Johnson purportedly conducted an investigation regarding this retaliation, but the investigation itself was retaliatory in that Ms. Johnson only ever contacted the CMCSS principals who were excluding Ms. Bunt (in retaliation for her protected EEOC conduct), never interviewed or otherwise spoke to Ms. Bunt to hear her side of the story, and did not accept any of the evidence that Ms. Bunt tried to provide. *See id* at PageID# 646-647; *see also* R. 45-3, PageID#899-900. As a result, this investigation's outcome/summary contained inaccurate claims from CMCSS regarding Ms. Bunt's performance or interactions with students or coworkers that were provably incorrect but for which Ms. Bunt was never given a chance to explain her side of the situation or provide such proof. *See id.*

## SUMMARY OF ARGUMENT

Because Ms. Bunt can establish the necessary elements of a prima facie claim for retaliation under both Title VII and the ADEA—that she engaged in protected activity; that CMCSS knew that the she had engaged in this protected activity; that CMCSS took materially adverse actions; and that there was a causal link between Ms. Bunt's protected activity and CMCSS's adverse actions—the district court erred in granting judgment as a matter of law in favor of CMCSS and thereby dismissing Ms. Bunt's retaliation claims.

## STANDARD OF REVIEW

This Court reviews de novo a district court's grant of summary judgment using the *Matsushita-Anderson-Celotex* standard, *e.g. Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012), viewing facts in the record and reasonable inferences that can be drawn therefrom in the light most favorable to the nonmoving party, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), without weighing evidence, assessing credibility of witnesses, or determining the truth of matters in dispute, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears an initial burden of demonstrating that no genuine issue of material fact exists by producing evidence to demonstrate the absence of a genuine issue of material fact or "by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986) (internal quotation marks omitted). If the moving party meets this burden, the nonmoving party may not "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing Fed. R. Civ. P. 56; *Matsushita*, 475 U.S. at 586). There are disputed facts here, but if there were not any, the Court should review de novo whether the district

17

court properly applied the substantive law. *See Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir. 2003).

# ARGUMENT

Under both Title VII and the ADEA, the prima facie elements for the retaliation claims that Ms. Bunt seeks to assert using indirect or circumstantial evidence the same—establishing (1) she engaged in activity protected by Title VII and/or the ADEA; (2) CMCSS knew that the she had exercised her protected rights; (3) the CMCSS thereafter took an action that was materially adverse to her; and (4) there was a causal link between Ms. Bunt's protected activity and the adverse action. *See, e.g.*, *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 568 (6th Cir. 2019); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008). Because Ms. Bunt could establish her prima facie retaliation claims, the District Court erred in granting summary judgment in favor of CMCSS.

## I.   Ms. Bunt indisputably engaged in protected conduct.

Ms. Bunt, CMCSS, and the district court all agreed that Ms. Bunt's having filed three EEOC charges of discrimination constitutes engaging in protected conduct and therefore satisfies the first element of a prima facie retaliation.

II.    **Ms. Bunt's evidence at summary judgment could sufficiently established the second element of her prima facie retaliation claims by demonstrating that certain CMCSS personnel were aware of her protected conduct.**

As CMCSS's briefing below recited and as the district court noted, the person(s) committing the adverse action having knowledge of the protected conduct at issue is a "necessary element of the *prima facie* case," *Brown v. City of Franklin*, 430 F. App'x 382, 386 (6th Cir. 2011), because a person cannot retaliate against someone for engaging in a protected activity without being aware of the protected conduct. Although CMCSS provided a robust amount of evidence indicating that a number of the persons who took adverse actions against Ms. Bunt were not aware of Ms. Bunt's EEOC charges at the time they took adverse actions against Ms. Bunt, there are—at minimum—genuine issues of fact as to when and whether some of these officials, such as Dr. Slight, became aware of Ms. Bunt's EEOC charges. *See, e.g.*, R. 45-1, PageID#796-797, 809-811. Ms. Bunt respectfully submits that the district court erred in discounting such disputed facts.

Moreover, even if the disctrict court's resolving these disputes of fact in CMCSS's favor in contravention of the Rule 56 standard, it is uncontroverted that CMCSS's HR officials were aware of Ms. Bunt's EEOC charges at or around the time they were filed and before any of the adverse actions they took, in the form of failing to seriously investigate Ms. Bunt's subsequent complaints or to comply with CMCSS's own procedures for such complaints. At bare minimum, Ms. Bunt's

claims on this front certainly satisfy the second, knowledge element of her prima facie case so that this claim withstands summary judgment.

### III. CMCSS's numerous adverse actions against Ms. Bunt satisfy the third element of her prima facie retaliation claim.

The Supreme Court has explained that an action is adverse if it might dissuade a reasonable worker from making or supporting a charge of discrimination. *See Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 68 (2006). As the district court and CMCSS emphasize, Ms. Bunt continues to work for the school system as a substitute teacher, but this fact is not fatal to Ms. Bunt's retaliation claims.

Rather, the numerous actions taken by CMCSS administrators and other personnel amount to several sufficient adverse actions to dissuade a reasonable worker such as Ms. Bunt from making or pursuing a charge of discrimination. Setting aside the adverse actions taken by CMCSS employees about whom there are genuine issues of material fact as to their knowledge of Ms. Bunt's EEOC charges at the time of their actions, *see id.*, there is, once again, no dispute that CMCSS's HR department took adverse actions against Ms. Bunt by failing to take seriously the complaints she was raising, failing to follow CMCSS's own protocols and procedures for how to resolve those complaints, not investigating the complaints, not permitting Ms. Bunt to provide the evidence she was attempting to proffer in support of her complaints, and thereby having a one-sided investigation process to

Ms. Bunt's immense disadvantage and to the detriment of Ms. Bunt's employment opportunities with CMCSS either as a substitute or as a full-time teacher.

**IV.   Ms. Bunt's evidence at summary judgment sufficiently establish a causal connection between her protected conduct and CMCSS's adverse actions.**

Precedent is clear that causation cannot necessarily be inferred through temporal proximity alone, *see, e.g.*, *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 471-72 (6th Cir. 2012), Ms. Bunt can establish a causal connection between her protected conduct and the adverse actions she suffered through a combination of temporal proximity and other elements such as demonstrating she was treated differently from other employees. *See, e.g.*, *Singfield v. Akron Metropolitan Hsg. Auth*, 389 F.3d 555, 563 (6th Cir. 2004). Further, a temporal connection plus investigations—or in this case a lack thereof—regarding conduct are enough to establish the causation prong of a prima facie case of retaliation. *Randolph v. Ohio Dept. of Youth Services*, 453 F.3d 724, 737 (6th Cir. 2006). Moreover, where the employer's true reasons for retaliating against the plaintiff presented an "elusive factual question," summary judgment for the employer is inappropriate. *Singfield*, 389 F.3d at 565. Given this standard and given the facts described above at the summary judgment stage, Ms. Bunt can sufficiently establish a causal connection between her protected conduct of filing her EEOC charges and the numerous adverse actions to which she was subjected by CMCSS.

**CONCLUSION**

For the foregoing reasons, Ms. Bunt respectfully requests that this Court reverse the District Court's award judgment as a matter of law dismissing her retaliation claims against CMCSS, that this Court reinstate these claims and remand the case to proceed to trial, and that the Court award any other relief it finds appropriate.

Respectfully submitted,

/s/ *Hunter C. Branstetter*
Hunter C. Branstetter
SHERRARD ROE VOIGT & HARBISON, PLC
150 3rd Avenue South, Suite 1100
Nashville, Tennessee 37201
Tel.: (615) 742-4200
Fax: (615) 742-4539
hbranstetter@srvhlaw.com

*Counsel for Plaintiff-Appellant*

24

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and 6th Cir. R. 32(a), I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B):

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,473 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and 6th Cir. R. 32(b)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using Microsoft Word using a proportionally spaced typeface, 14-point Times New Roman.

/s/ *Hunter C. Branstetter*
Attorney for Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that I am electronically filing this Brief of Plaintiff-Appellant foregoing with the Court for the United States Court of Appeals for the Sixth Circuit using the appellate CM/ECF system on February 23, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Hunter C. Branstetter*
Attorney for Plaintiff-Appellant

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

*Bunt v. Clarksville-Montgomery County School System*
No. 3:21-cv-896 (M.D. Tenn.)

| Docket No. | Description of Document | PageID# |
|---|---|---|
| 1 | Complaint | 1-81 |
| 1-4 | Documents Related to Ms. Bunt's EEOC Charges of Discrimination | 67-81 |
| 7 | Defendant's Motion to Dismiss | 100-101 |
| 8 | Memorandum in Support of Defendant's Motion to Dismiss | 102-112 |
| 14 | Plaintiff's Response in Opposition to Defendant's Motion to Dismiss | 252-278 |
| 15 | Plaintiff's "Important Details Regarding Exhibits Pertaining to the Plaintiff's Response in Opposition to Defendant's Motion to Dismiss" | 279-297 |
| 16 | Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss | 298-303 |
| 17 | Order [appointing Counsel to represent Plaintiff in this case] | 304 |
| 19 | Memorandum [Accompanying Order on Defendant's Motion to Dismiss] | 306-332 |
| 20 | Order [granting in part and denying in part Defendant's Motion to Dismiss] | 333-334 |
| 22 | Defendant's Answer to Complaint | 337-345 |

| 39 | Defendant's Motion for Summary Judgment | 386-387 |
|---|---|---|
| 40 | Defendant's Memorandum in Support of Motion for Summary Judgment | 388-410 |
| 41 | Defendant's Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment | 411-429 |
| 42 | Defendant's Notice of Filing of Documents in Support of Defendant's Motion for Summary Judgment | 430-431 |
| 42-1 | Deposition of Kathleen Bunt | 432-632 |
| 42-2 | Kathleen Bunt's Responses to CMCSS's First Set of Discovery Requests | 633-657 |
| 42-3 | Kathleen Bunt's Substitute Work History Report 2022-2023 | 658-691 |
| 42-4 | Declaration of Angela Huff | 692-701 |
| 42-5 | Declaration of Erica Christmas | 702-706 |
| 42-6 | Declaration of James Bailey | 707-709 |
| 42-7 | Declaration of Jean Luna-Vedder | 710-712 |
| 42-8 | Declaration of Jeanine Johnson | 713-725 |
| 42-9 | Declaration of Keith Parker | 726-728 |
| 42-10 | Declaration of Matthew Slight | 729-731 |
| 42-11 | Declaration of Melissa Izatt | 732-763 |
| 42-12 | Declaration of Michael Tharpe | 764-767 |

28

| 42-13 | Declaration of Shane Smith | 768-772 |
| 45 | Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment | 776-787 |
| 45-1 | Plaintiff's Response to Defendant's Statement of Undisputed Material Facts | 788-818 |
| 45-2 | Collective Exhibit 1 to Plaintiff's Responses to Defendant's Statements of Undisputed Material Fact—Excerpts of Ms. Bunt's Document Production | 819-897 |
| 45-3 | Declaration of Kathleen A. Bunt | 898-901 |
| 46 | Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment | 902-913 |
| 46-1 | Declaration of Erica Christmas | 914-951 |
| 47 | Memorandum [accompanying Order granting Defendant's Motion for Summary Judgment] | 952-993 |
| 48 | Order [Granting Defendant's Motion for Summary Judgment and Plaintiff's Claims with Prejudice] | 994 |
| 49 | Entry of Judgment | 995 |
| 50 | Plaintiff's Notice of Appeal | 996-997 |