IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Case No. 23-6020

KATHLEEN BUNT
Plaintiff-Appellant,

v.

CLARKSVILLE MONTGOMERY COUNTY SCHOOL SYSTEM
Defendant-Appellee.

---

**BRIEF OF DEFENDANT-APPELLEE
CLARKSVILLE MONTGOMERY COUNTY SCHOOL SYSTEM**

---

STEPHEN W. ELLIOTT, BPR #20062
HOWELL & FISHER, PLLC
3310 West End Avenue, Suite 550
Nashville, TN 37203
Ph. 615/921-5224
selliott@howell-fisher.com
Attorney for Defendant-Appellee

# TABLE OF CONTENTS

Table of Contents ...................................... 2

Table of Authorities .................................. 3

Statement Regarding Oral Argument ..................... 5

Statement of The Issue Presented for Review .......... 6

Statement of the Case ................................ 7

Summary of The Argument .............................. 39

Argument ............................................. 41

Conclusion ........................................... 62

Certificate of Compliance

Certificate of Service

Designation of Relevant District Court Documents

## TABLE OF AUTHORITIES

**Cases**                                                    **Pages**

Anderson v. Liberty Lobby, Inc.,

477 U.S. 242 (1986) ..............................41

Brown v. City of Franklin, 430 Fed. Appx. 382

(6th Cir. 2011)...................................43

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S.53,

126 S.Ct. 2405, 165 L.Ed.2d 345(2006)..........52

Cain v. Potter, No. 1:05CV2378, 2006 WL 3146435

(N.D. Ohio Oct. 31, 2006) ......................43

Crady v. Liberty National Bank & Trust Co.of Indiana,

993 F.2d 132 (7th Cir. 1993) ....................53

Cutcliff v. Wright State University, 3:17-cv-222, 2019

WL 316909(S.D. Ohio, Jan. 24, 2019) ............58

EEOC v. Avery Dennison Corp., 104 F.3d 858

(6th Cir. 1997) ..................................57

EEOC v. Ford Motor Co., 782 F.3d 753

(6th Cir. 2015)...................................40

Eyster v. Metro Nashville Airport Auth.,

479 F.Supp.3d 706 (M.D. Tenn. 2020) .............61

Hollins v. Atl. Co., 188 F.3d 652(6th Cir. 1999) .52

Hostettler v. Coll. of Wooster, 895 F.3d 844

(6th Cir. 2018) ...................................40

Johnson v. United States Dept. of Health & Human

Services, 30 F.3d 45 (6th Cir. 1994) ..........43,58

Kocsis v. Multi-Care Management, Inc., 97 F.3d 876

(6th Cir. 1996) ...................................54

Ladd v. Grand Trunk W.R.R., Inc., 552 F.3d 495

(6th Cir. 2009)....................................42

Mulhall v. Ashcroft, 287 F.3d 543 (2002) ..43,50,58

Polk v. Yellow Freight Sys., Inc.

876 F.2d 527 (6th Cir. 1989)......................58

Scott v. Eastman Chem. Co., 275 Fed. Appx. 466

(6th Cir. 2008)....................................43

Stephens v. Erickson, 569 F.3d 779

(7th Cir. 2009)....................................53

Visser v. Packer Eng'g Assocs. Inc., 924 F.2d 655

(7th Cir. 1991)....................................50

Wrenn v. Gould, 808 F.2d 493 (6th Cir. 1987) .....41

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

CMCSS respectfully submits that the decisional process would be significantly aided by an oral argument. The issue in this appeal raises many questions that are fact specific and the deciding panel would benefit from being able to direct any factual questions not addressed in the brief to the parties' counsel during oral argument. Accordingly, CMCSS requests an oral argument in this matter.

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Whether or not the district court correctly granted summary judgment in favor of CMCSS based on its finding that plaintiff-appellant Kathleen Bunt ("Ms. Bunt") failed to establish a *prima facie* case of retaliation against CMCSS.

## STATEMENT OF THE CASE

Ms. Bunt filed this action against CMCSS in December 2021 alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), retaliation in violation of the ADEA and Title VII of the Civil Rights Act of 1964 ("Title VII"), and tortious interference with a prospective business relationship in violation of Tennessee common law. (Complaint, R.1, Page ID# 1-47). By Order dated June 22, 2022, the district court dismissed Ms. Bunt's claims of age discrimination and tortious interference with business relations against CMCSS, but kept her retaliation claims against CMCSS intact. (Order on Motion to Dismiss, R. 20, Page ID# 333-334).

Ms. Bunt's retaliation claims were the subject of CMCSS's motion for summary judgment. (CMCSS's Motion for Summary Judgment, R. 39, Page ID# 386-387; Memorandum of Law in Support of Motion for Summary Judgment, R. 40, Page ID# 388-410). By Memorandum and Order dated October 18, 2023 and a corresponding judgment entered on the same

date, the district court granted CMCSS's motion for summary judgment in its entirety and dismissed Ms. Bunt's retaliation claims against CMCSS with prejudice. (Memorandum, R. 47, Page ID# 952-993; Order, R. 48, Page ID# 994; Entry of Judgment, R. 49, Page ID# 995). Ms. Bunt timely filed a Notice of Appeal of the order of dismissal on November 17, 2023. (Notice of Appeal, R. 50, Page ID# 996). Ms. Bunt asserts in this appeal that the district court erred in granting CMCSS's motion for summary judgment.

Set out below is a statement of facts which are relevant to the issue raised in this appeal.

**A.  Ms. Bunt's History of EEOC Charges against CMCSS.**

Ms. Bunt has been employed by CMCSS as a substitute teacher since 2014. (Bunt Dep., R. 42-1, Page ID#466-467). Beginning in January 2018, she filed three separate charges of discrimination and/or retaliation against CMCSS with the Equal Employment Opportunity Commission ("EEOC"). On January 10, 2018, she filed her first charge of discrimination and retaliation against CMCSS with the

EEOC ("January 2018 EEOC charge").(January 2018 EEOC Charge, R. 1-4, Page ID# 68-69). She alleged that she was subjected to retaliatory acts by CMCSS soon after she filed the January 2018 EEOC Charge which prompted her to file a second EEOC charge against CMCSS on August 26, 2019 ("August 2019 EEOC charge").(August 2019 EEOC Charge, R. 1-4, Page ID# 71-72; Bunt Dep., R. 42-1, Page ID# 469). On July 9, 2021, she filed her third EEOC charge against CMCSS asserting both age discrimination and retaliation when she was denied a teaching position at West Creek High School on December 18, 2019 ("July 2021 EEOC Charge."). (July 2021 EEOC Charge, R.1-4, Page ID# 74-75).

## B. **Ms. Bunt's Retaliation Claims against CMCSS.**

Ms. Bunt accused CMCSS of unlawfully retaliating against her because of the EEOC charges she had filed against the school system. As fully discussed hereunder, each retaliatory act that Ms. Bunt has complained about is based on nothing more than Ms. Bunt's own assumptions,

speculations, suspicions, hunches, and conspiratorial theories.

1.   Increased scrutiny through principal observation visits

Ms. Bunt claimed that after she filed her January 2018 EEOC charge, she received "more than 20" principal observation visits while substitute teaching, the first one of which was the visit by Michael Tharpe (Bunt Dep., R. 42-1, Page ID# 470-471, 476; Bunt's Discovery Responses, R. 42-2, Page ID# 642). Except for a handwritten list that she herself prepared, Ms. Bunt has not offered any other documentation of these observation visits that she had complained about as being retaliatory. (See Excerpts of Bunt's Document Production, R. 45-2; Page ID# 839-843).

Mr. Tharpe submitted a Declaration in support of CMCSS's summary judgment motion, where he admitted that he did conduct an in-person observation of Ms. Bunt in the classroom where she was working as a substitute teacher at Northeast High School on January 24, 2018.

(Tharpe Declaration, R. 42-12, Page ID# 765-766). After this observation, Mr. Tharpe completed a "CMCSS Substitute Performance Feedback" where he provided a positive evaluation report on Ms. Bunt. (Id., Page ID# 766-767). Mr. Tharpe was not aware in 2018 that Ms. Bunt had filed any type of charge against CMCSS with the EEOC. (Id., Page ID# 764-765).

Ms. Bunt testified that she was suspicious about Mr. Tharpe's visit and the positive evaluation report he gave her on that visit. (Bunt Dep., R. 42-1, Page ID# 481-482, 485-486).[1] Ms. Bunt believed that Mr. Tharpe spoke with other administrators at CMCSS such as Mr. Massey and a non-CMCSS employee, Mr. Lang, prior to Mr. Tharpe observing her work in the classroom. (Id., Page ID# 482). She admitted that this was a mere assumption on her part and that she had no facts, information, or knowledge to back up this assumption. (Id.).

Ms. Bunt also admitted that she had no facts, information, or knowledge that any of the individuals who

---

[1]  It should be noted that Ms. Bunt admitted the Tharpe evaluation was positive in her favor, not negative.

performed the observation visits that she complained about knew that she had filed an EEOC charge against CMCSS. (Id., Page ID# 513). She admitted that none of these individuals ever told her that they were conducting the observation visits because she had filed an EEOC charge against CMCSS. (Id.).

2.  Threat and intimidation by Assistant Principal Shane Smith

Ms. Bunt claimed that in retaliation for her January 2018 EEOC charge, she was threatened, intimidated, and dismissed by Northwest High School ("NWHS") Assistant Principal Shane Smith, who yelled at her in the presence of students by stating "You are going to jeopardize your future with this district." (Bunt Dep., R. 42-1, Page ID# 497, 499). Ms. Bunt assumed that Mr. Smith knew about her EEOC charge when he made this comment to her. (Id., Page ID# 501, 504). Ms. Bunt admitted that she "does not have anything" to prove that Mr. Smith knew that she had filed an EEOC charge against CMCSS. (Id., Page ID# 504). She conceded that her allegation that Mr. Smith knew about

her EEOC charge was based entirely on her own assumptions. (Id.).

In his Declaration in support of CMCSS's summary judgment motion, Mr. Smith stated that his only interaction with Ms. Bunt was the May 21, 2019 incident that Ms. Bunt complained about in this lawsuit. (Smith Declaration, R. 42-13, Page ID# 769-770). He documented what transpired during that incident in an e-mail note he prepared and submitted to the NWHS Principal, Theresa Muckleroy. (Id.). Mr. Smith told Ms. Bunt that she would jeopardize her future as a substitute teacher at NWHS if she persisted with her actions on that date. (Id., Page ID# 770). Mr. Smith, however, denied that this comment was made in retaliation for Ms. Bunt's filing of the January 2018 EEOC charge. Mr. Smith was <u>not</u> aware of a civil lawsuit against CMCSS in 2019 when Ms. Bunt was working as a substitute teacher at NWHS. (Id., Page ID# 768-769. Mr. Smith also was <u>not</u> aware in 2019 that Ms. Bunt had filed any type of charge against CMCSS with the EEOC. (Id.). Further, even if Mr. Smith had been aware

13

(which he was not), these facts would not have mattered to him, as he would have considered these as facts for the administration at Central Office of CMCSS to address, and not by him. (Id., Page ID# 769).

### 3. Denied interviews for three teaching positions

Ms. Bunt claimed that in retaliation for her filing of the January 2018 EEOC charge, she was denied interviews for three teaching positions that she applied for with CMCSS. (Bunt Dep., R. 42-1, Page ID# 514-515). These positions were the following:   Related Arts Teacher at West Creek Middle School ("Related Arts Teacher"); Career Exploration Teacher at West Creek High School ("CE Teacher"); and CTE Consulting Teacher at Central Services South ("CTE position"). (Id; Page ID# 514).  She admitted that no one from CMCSS told her that the reason she did not obtain interviews for these three positions she applied for was because she had filed an EEOC charge against CMCSS. (Id., Page ID# 519).  She further admitted that she did not have any kind of documentation to prove her allegation that she was denied

interviews for these three positions because someone from CMCSS knew that she had filed the January 2018 EEOC charge. (Id., Page ID# 520).

A. Related Arts Teacher

Ms. Bunt testified that she applied for the Related Arts Teacher position in October 2018 but was denied an interview. (Bunt Dep., R. 42-1, Page ID# 514-515). She claimed that she did not receive a response to her application or an invitation to interview. (Id., Page ID# 518). She assumed that the reason she did not receive a response or an invitation to interview was in retaliation for having filed the January 2018 EEOC charge. (Id., Page ID# 519). She conceded that she does not have any proof to support her allegation that she was denied an interview in retaliation for filing the January 2018 EEOC charge. (Id., Page ID# 520).

B. CE Teacher

Ms. Bunt's assertion that she was denied an interview for the position of CE Teacher is another one of her unfounded assumptions. Matthew Slight, who was the West

Creek High School Principal at the time, recalled that he interviewed Ms. Bunt for the CE Teacher position in late December 2019. (Slight Declaration, R. 42-10, Page ID# 730). Mr. Slight took the time to interview Ms. Bunt because he was interested in her as a candidate. (Id.). He did not give her a "token" interview. (Id.). Following the interview, Mr. Slight sent Ms. Bunt an email thanking her for her time to interview for the position. (Id.).  He also informed Ms. Bunt that he had selected another applicant for the position. (Id.). He hired an internal candidate for the position who was already teaching at the school who he felt was a better fit for the position. (Id., Page ID#730-731).  Mr. Slight did not know that Ms. Bunt had filed an EEOC charge against CMCSS when he interviewed her for the CE Teacher position or when he made his hiring decision for the position. (Id., Page ID# 729, 731).

B.  CTE Position

Ms. Jean Luna-Vedder was CMCSS's Director of High Schools when the decision to hire for the CTE position

was made in June 2019. (Luna-Vedder Declaration, R. 42-7, Page ID# 711). According to Ms. Luna-Vedder, Ms. Bunt submitted an application for the CTE position on June 18, 2019 at 9:10 pm. (Id.). On June 19, 2019, the position had been filled by her with an administrative transfer. (Id.). Ms. Luna-Vedder denied that Ms. Bunt was denied an interview or excluded from the CTE position. (Id.). Ms. Luna-Vedder simply did not know that Ms. Bunt had submitted an application less than 24 hours prior to her making a selection for the position. (Id.). Ms. Luna-Vedder denied any knowledge of the EEOC charge that Ms. Bunt had filed against CMCSS at the time she made the decision to hire for the CTE position. (Id., Page ID# 712).

### 4.  Denied long-term substitute positions at NEHS in Spring 2019

Ms. Bunt also made assumptions that she was denied long-term substitute positions at Northeast High School ("NEHS") in retaliation for her filing of the January 2018 EEOC charge. (Bunt Dep., R. 42-1, Page ID# 525-

526). She complained that she was "blocked" from long-term substitute positions at NEHS while teachers who did not have the required teacher licenses or certifications were allowed to take long-term substitute positions at the school. (Bunt Dep., R. 42-1, Page ID# 522-526; see also Izatt Declaration, R. 42-11, Page ID# 753). She believed that being denied the long-term substitute job at NEHS was retaliatory, based on her speculation of it being "just another one of the things that happened. . . that shouldn't have happened." (Bunt Dep., R. 42-1, Page ID# 526). She conceded, however, that she had no proof to support her speculation as no one from CMCSS told her that she was denied a long-term substitute position because she had filed an EEOC charge against CMCSS. (Id., Page ID# 527). She further admitted that she had not seen any e-mails that prove her assumption that she was denied long-term substitute positions in retaliation for filing an EEOC charge against CMCSS. (Id.).

Ms. Melissa Izatt, CMCSS's Classified Employment and Substitute Teacher Coordinator / Human Resource

Coordinator, addressed Ms. Bunt's complaint that she had been denied long-term substitute positions at NEHS in retaliation for the EEOC charge she filed against CMCSS. (Izatt Declaration, R. 42-11, Page ID # 734).   In a June 5, 2019 e-mail that Ms. Izatt sent to Ms. Bunt, Ms. Izatt explained that based on her investigation, she found that no one from CMCSS was preventing Ms. Bunt from receiving long-term substitute teaching positions. (Id).   In particular, Ms. Izatt addressed Ms. Bunt's complaint that she was being blocked from long-term substitute positions at NEHS. (Id). Ms. Izatt explained the process and requirements for long-term substitute placements in the district and addressed the incorrect information that Ms. Bunt had about the credentials of the  teachers who secured the long-term substitute positions at NEHS. (Id., Page ID# 761).   In the same email, Ms. Izatt asked Ms. Bunt if she had information of specific actions taken by CMCSS employees that she felt impeded her ability to be considered for long-term substitute positions and to provide that information to her so she could investigate

it. (Id., Page ID# 735; 761).  Ms. Bunt, however, never
provided any such information to Ms. Izatt. (Id., Page
ID# 735). Finally, Ms. Izatt reassured Ms. Bunt that she
was not in danger of losing her job as a substitute
teacher at CMCSS. (Id.).  In fact, to Ms. Izatt's
knowledge, Ms. Bunt was still being notified of
substitute teaching opportunities with CMCSS as of the
end of the most recent school year, 2022-2023. (Id.).

5.  Problems with substitute phone system in January
     2018 through August 2019

Ms. Bunt alleged that in retaliation for her filing
of the January 2018 EEOC charge, she experienced problems
with the CMCSS's substitute phone system, which
prevented her from learning about potential substitute
teaching assignments for the period January 2018 through
August 2019. (Bunt Dep., R. 42-1, Page ID# 529-530; see
also Plaintiff's Responses to Statement of Undisputed
Facts, R. 45-1, Page ID# 804).  She further assumed
that CMCSS manipulated the increase/decrease calls for

her in the substitute phone system in retaliation for
the EEOC charge she filed. (Id., Page ID # 535).

Ms. Bunt admitted that she did not have any facts,
information, or knowledge that the problems she had with
the CMCSS's substitute phone system were in retaliation
for her filing an EEOC charge against CMCSS. (Id., Page
ID# 531). She admitted that no one from CMCSS told her
that her problems with the substitute phone system were
in retaliation for the EEOC charge that she filed against
CMCSS. (Id., Page ID# 531-532). She also admitted that
she had no documents or emails to support her assertion
that the problems she had with the substitute phone
system were in retaliation for the EEOC charge she filed.
(Id., Page ID# 532). She admitted that other than her
own unfounded conjecture that CMCSS manipulated the
increase/decrease calls for her in the substitute phone
system, she had no other information to support the
allegation. (Id., Page ID# 536).

CMCSS's HR Director, Ms. Izatt, addressed Ms. Bunt's
complaints about the phone system not notifying her of

substitute teaching positions during the period January 2018 through August 2019 by reviewing the call logs for that period. In her Declaration in support of CMCSS's summary judgment motion, Ms. Izatt attested that contrary to Ms. Bunt's speculations, the SmartFind telephone system that notifies substitute teachers of potential substitute teaching assignments did indeed call Ms. Bunt. (Izatt Declaration, Page ID# 735, 761).   The data Ms. Izatt reviewed indicated that over the course of the 2018-2019 (most recent school year at that time), Ms. Bunt was called 210 times for substitute teaching assignments.  She accepted 153 of those calls.  She hung up on 22 of those calls and did not answer 35 of those calls.  (Id.).

Additionally, Erica Christmas, CMCSS's Director of Classified Employment and Ms. Bunt's supervisor, attested that in August 2019, substitute teachers like Ms. Bunt were notified of assignments not only through the phone system but also via email communications. (Christmas Declaration, R. 42-5, Page ID# 704). Substitute

representatives also had access to an application that they could use to choose their assignments or they could log into the system via the Frontline website. (Id).  In other words, the telephone system which Ms. Bunt complained of was only one of the many systems by which CMCSS notified its substitute teachers of potential assignments.  By focusing on her alleged problems with the phone notification system, Ms. Bunt obviously ignored the many other ways that substitute teachers like her were being notified of assignments at CMCSS.

   6.  Exclusion from substitute teaching positions at
       schools within CMCSS

Ms. Bunt accused CMCSS of retaliating against her for the EEOC charges she had filed against the school system by excluding her from substitute teaching positions at Northeast Middle School ("NEMS"), Montgomery Central Middle School ("MCMS"), Kenwood High School ("KHS"), and West Creek High School("WCHS"). (Complaint, R.1, Page ID# 14, 17; Bunt Dep., R. 42-1, Page ID# 536-540).

1. <u>NEMS</u>

Ms. Bunt <u>speculated</u> that she was excluded from substitute teaching at NEMS by Aimee Hoffman, a fellow teacher, in retaliation for filing the January 2018 EEOC charge. (Bunt Dep., R. 42-1, Page ID# 543). She admitted that she had no facts, information, or knowledge to support her speculation that Ms. Hoffman excluded her because Ms. Hoffman knew about her EEOC charge against CMCSS. (Id.). Not only was this pure speculation on Ms. Bunt's part, but her claim that Ms. Hoffman, a fellow teacher, excluded her was also patently false. Ms. Hoffman, as a fellow teacher, had no authority to exclude anyone from substitute teaching. Principals at each school (and not teachers like Ms. Hoffman) decide who they allow or not to fill substitute teaching positions at the school. (See Christmas Declaration, R. 42-5, Page ID# 703).

Erica Christmas, Ms. Bunt's supervisor, denied any retaliatory motive in the decision to temporarily exclude

Ms. Bunt from NEMS. In her Declaration in support of CMCSS's summary judgment motion, Ms. Christmas noted that while Ms. Bunt had initially been excluded at NEMS, she eventually did return to substitute teaching positions there. (Id.). According to Ms. Christmas, the principals at each CMCSS school had full discretion as to who they allow or not to fill substitute teaching positions at their schools. (Id.).  As a substitute teacher, Ms. Bunt had multiple interactions with principals and other staff when she substituted in their schools. (Id.). Ms. Christmas believed that it would be reasonable to state that the principals may have observed and judged the extent of Ms. Bunt's teaching skills and interactions with students and other employees and decided on her future as a substitute teacher at their schools. (Id.).

### 2. MCMS

Ms. Bunt also <u>assumed</u> that she was excluded from substitute teaching at Montgomery Central Middle School ("MCMS") by Melissa Izatt in retaliation for filing an EEOC charge against CMCSS in January 2018. (Id.). She

admitted that she had no facts, information, or knowledge to support her assumption. (Id.).  Ms. Izatt denied retaliating against Ms. Bunt at any time for filing EEOC charges against CMCSS or any other reason. (Izatt Declaration, R. 42-11, Page ID# 738). Also, Ms. Izatt was not the principal of MCMS and, as such, had no authority to exclude Ms. Bunt from that school. Again, this was pure speculation on Ms. Bunt's part.

Ms. Bunt's supervisor, Ms. Christmas, also denied any retaliatory motive in Ms. Bunt's exclusion at MCMS. In fact, Ms. Bunt was excluded from MCMS because of the foul language she had used with students. (Christmas Declaration, R. 42-5, Page ID# 703).  Ms. Christmas attested that the principals at each CMCSS school had full discretion in filling substitute positions at their schools.(Id.). Based on the principals' observations about Ms. Bunt's interactions with students, they made the decision as to whether or not to allow her to substitute at their schools. (Id.).

3.  <u>KHS</u>

Ms. Bunt claimed that Keith Parker and James Bailey excluded her from Kenwood High School ("KHS") in retaliation for the January 2018 EEOC charge. (Bunt Dep., R. 42-1, Page ID# 547). She <u>speculated</u> that Mr. Bailey retaliated against her and excluded her from KHS based on information he might have learned about her from Mr. Lang, who was the principal who Ms. Bunt claimed caused her to be terminated from her employment in 2010. (Id. see also Complaint, R-1, Page ID# 18). She admitted that she had no facts, information, or knowledge to support her allegations against Mr. Parker and Mr. Bailey. (Bunt Dep., R. 42-1, Page ID# 548; 571).  Unlike Ms. Bunt, who has no proof other than her own speculation that she was excluded from KHS in retaliation from the EEOC charges she had filed against CMCSS, both Mr. Parker and Mr. Bailey have provided evidence through their Declarations filed with the district court about the reasons why Ms. Bunt was excluded from KHS. (Parker Declaration, R. 42-9, Page ID# 727-728; Bailey Declaration, R. 42-6, Page

ID# 708-709). Both Mr. Parker and Mr. Bailey denied any retaliatory motive in excluding Ms. Bunt from KHS. (Id).

Mr. Parker, who was the Principal at KHS from 2019 to 2021, disputed Ms. Bunt's allegation that she was excluded from KHS in retaliation for the EEOC charges she had filed against CMCSS. (Parker Declaration, R. 42-6, Page ID# 708-709). During his time as KHS Principal, Mr. Parker became aware of negative interactions with students in the classroom by Ms. Bunt, such as: she struggled with student relationships; she agitated students; and she had incidents with students in the classroom that had occurred. (Id., Page ID# 708). Based on this information, to avoid further problems with students, Mr. Parker determined it was best to exclude Ms. Bunt from working as a substitute teacher at Kenwood High School. (Id.). Mr. Parker was not aware that Ms. Bunt had filed EEOC charges against CMCSS while he was the Principal at KHS from 2019 to 2021. (Id., Page ID# 708-709). The only reason Mr. Parker did not want Ms.

Bunt to work as a substitute teacher at KHS was because of the problems she was having with students. (Id.).

Mr. James Bailey, who was the Principal at KHS in July 2021, also disputed Ms. Bunt's allegations that her exclusion at KHS was in retaliation for the EEOC charges she had filed against CMCSS. Mr. Bailey succeeded Keith Parker as the Principal at KHS. (Bailey Declaration, R. 42-6, Page ID# 707-708). When he became Principal, Mr. Bailey was informed by Assistant Principals at KHS that there had been negative interactions between Ms. Bunt and the students in the classroom. (Id., Page ID# 708). For this reason, KHS administration determined it was best to exclude Ms. Bunt from working as a substitute teacher at KHS. (Id.). Based on the information from Assistant Principals who were already familiar with the situation, Mr. Bailey decided to continue to support the earlier decision to exclude Ms. Bunt from substitute teaching assignments at KHS. (Id.). Mr. Bailey was not aware that Ms. Bunt had filed an EEOC charge against CMCSS when he decided to continue the decision to exclude Ms. Bunt from

substitute teaching assignments at KHS. (Id., Page ID# 707-709).

It was Mr. Parker and Mr. Bailey's understanding that Ms. Bunt's exclusion from KHS would not necessarily result in Ms. Bunt being excluded from substitute teaching at other CMCSS schools, as the Principal of each CMCSS school decides who he/she will allow or disallow as substitute teachers in his/her respective schools. (Parker Declaration, R. 42-9, Page ID# 727; Bailey Declaration, R. 42-6, Page ID# 708).

4.  WCHS

Ms. Bunt claimed that she was excluded by Matthew Slight and then by Dr. Damaris Luna from West Creek High School ("WCHS") in retaliation for the January 2018 EEOC charge. (Bunt Dep., R. 42-1, Page ID# 548,550) She admitted that she had no facts, information, or knowledge to support her allegations against Mr. Slight and Dr. Luna. (Id., Page ID# 548, 550, 571). Also, Mr. Slight has testified in his Declaration that he did not

retaliate against Ms. Bunt.  (Sligh Declaration, R. 42-10, Page ID# 731).

Jeanine Johnson, CMCSS's Chief Human Resource Officer ("CHRO"), investigated Ms. Bunt's claim that she was excluded from substitute teaching positions at WCHS and KHS in retaliation for the EEOC charges she filed against CMCSS. (Johnson Declaration, R. 42-8, Page ID# 714).  As part of her investigation into Ms. Bunt's claim of retaliation against CMCSS, Ms. Johnson interviewed the four principals at KHS and WCHS who Ms. Bunt claimed excluded her from their schools. (Id., Page ID# 713-714). Each of these four principals detailed specific problems and concerns they had with Ms. Bunt and why they decided not to hire her for substitute teaching positions at their respective schools. (Id.).   The details of Ms. Johnson's interviews with these four principals are found in the October 4, 2021 report that she prepared regarding her investigation into Ms. Bunt's retaliation complaint. (Id., Page ID# 714, 721-722). Based on her interviews with the principals and her review of pertinent

documents, Ms. Johnson determined that Ms. Bunt had been excluded from substitute teaching jobs at KHS and WCHS based on interactions she had with students and the complaints that the schools had received about Ms. Bunt from parents, students, and other teachers. (Id., Page ID# 713-714). Ms. Johnson found no evidence that the principals at KHS and WCHS excluded Ms. Bunt from providing substitute teaching services at their schools because Ms. Bunt had filed complaints against CMCSS with the EEOC. (Id., Page ID# 714). In fact, none of the principals at KHS and WCHS had any knowledge of Ms. Bunt's EEOC charges. (Id.). Ms. Johnson found that no retaliation had occurred and that any claim of retaliation by Ms. Bunt was simply her personal opinion and belief. (Id.).

In her role as CHRO, Ms. Johnson was aware of the EEOC charges Ms. Bunt had filed against CMCSS. (Id.). However, she had not shared the existence of the EEOC charges with any of the four principals she interviewed in connection with her investigation into Ms. Bunt's

claim of retaliation. (Id.). She also did not disseminate the existence of Ms. Bunt's EEOC charge to any school administrator or principal in CMCSS. (Id).

Ms. Bunt appealed Ms. Johnson's decision of no retaliation to Angela Huff, CMCSS's Interim Director of Schools at that time. (Id.). Based on her independent review of the underlying investigation materials, Director Huff agreed with Ms. Johnson's conclusion that there was no evidence to support Ms. Bunt's allegation that she was excluded from KHS and WCHS in retaliation for the EEOC charges she had filed against CMCSS. (Huff Declaration, R.42-4, Page ID# 694).

7. Failure to adequately investigate retaliation claims

Ms. Bunt has further alleged that CMCSS unlawfully retaliated against her by failing to adequately investigate her retaliation claims and for failing to follow CMCSS's own protocol and procedures in resolving her complaints of retaliation. (Bunt's Response to CMCSS's Motion for Summary Judgment, R. 45, Page ID# 785;

Bunt Declaration, R. 45-3, Page ID# 899-900). These are again some of the many instances of Ms. Bunt's unfounded conjectures against CMCSS as these assertions find no support in the record of this case.

Contrary to Ms. Bunt's assertion, CMCSS took her complaints of retaliation seriously by conducting an investigation regarding her complaint that she had been excluded from substitute teaching positions at KHS and WCHS in retaliation for the EEOC charges she had filed against the school system. (See Johnson Declaration, Page ID# 713-714). CMCSS's Chief Human Resources Officer, Jeanine Johnson, conducted the investigation into Ms. Bunt's complaints of retaliation pursuant to CMCSS Policy HUM-P010, which is the CMCSS Discrimination Complaints Procedure. (Id.,Page ID# 713).  In the investigation, CHRO Johnson followed the exact procedure outlined in Section 5 of the policy. (Id., Page ID# 717). Upon receipt of Ms. Bunt's complaint, Ms. Johnson investigated the complaint by conducting the necessary interviews with people who may have knowledge of the allegations in Ms.

Bunt's complaint. (Id., Page ID# 713, 721-722). After the investigation was completed, Ms. Johnson provided a written notice of her findings to Ms. Bunt. (Id., Page ID# 713-714). Ms. Bunt then was allowed to provide a rebuttal of Ms. Johnson's findings. (Id., Page ID# 723-725).

Pursuant to the policy, Ms. Bunt had the opportunity to appeal, and she did appeal, Ms. Johnson's decision of no retaliation to Angela Huff, CMCSS's Interim Director of Schools at that time. (See Huff Declaration, Page ID# 694). Like Ms. Johnson, Director Huff conducted her independent review of Ms. Johnson's decision of no retaliation pursuant to CMCSS Policy HUM-P010. (Id., Page ID # 694-5). Director Huff followed the exact procedure outlined in Section 5.5 of the policy. (Johnson Declaration, R. 42-8, Page ID# 718). Under Section 5.5, all original documentation regarding the complaint, the investigation materials and the findings/resolutions are forwarded to the Director of Schools for her independent review/evaluation.(Id.). The Director may seek

additional information or clarification as she deems necessary to appropriately review the appealed matter.(Id.).

Based on her independent review of the underlying investigation materials, Director Huff agreed with Ms. Johnson's conclusion that there was no evidence to support Ms. Bunt's allegation that she was excluded from KHS and WCHS in retaliation for the EEOC charges she had filed against CMCSS. (Huff Declaration, R.42-4, Page ID# 694). Director Huff noted that Ms. Johnson was a well-experienced human resources administrator and that she trusted her to conduct a thorough investigation, which Director Huff believed she did in Ms. Bunt's case, based on the thoroughness of her report. (Id.).

Despite Director Huff's final decision on her appeal, Ms. Bunt continued to argue with Director Huff via email claiming that the review by Director Huff into her complaint was one-sided as she was not allowed to participate in the investigation. (Id., Page ID# 699; see also Bunt's Response to CMCSS's Motion for Summary

Judgment, R. 45, Page ID# 786). Director Huff responded to Ms. Bunt to inform her that her review was conducted in accordance with the procedure laid out in CMCSS Policy HUM-P010. (Huff Declaration, R. 42-4, Page ID# 694, 700).

Ms. Bunt also questioned the adequacy of the investigation by Ms. Johnson asserting, without basis, that she had been kept out of the investigative process. She complained that she never received any documentation of the complaints against her that formed the basis for her exclusion from some of the schools at CMCSS. (Bunt's Response to CMCSS's Motion for Summary Judgment, Page ID# 781). This allegation by Ms. Bunt is again unfounded. Ms. Christmas, who was the CMCSS HR Coordinator during the relevant period, regularly communicated with Ms. Bunt about why she was being excluded from substitute teaching positions at some schools in CMCSS. (Christmas Declaration, R. 46-1, Page ID# 917-918). These communications were as follows:

a. On March 5, 2021, Ms. Christmas informed Ms. Bunt that she received several statements regarding Ms.

Bunt's treatment of students at KHS and her approach with these students regarding her frustration with the class. Dr. Christmas informed Ms. Bunt that as a result of these students' statements, the principal at KHS requested that Ms. Bunt be excluded from that school. (Id., Page ID# 917, 931).

b.  On March 10, 2021, Ms. Christmas provided Ms. Bunt with a summary of the students' complaints against her.  The complaints were similar in that the students complained about how Ms. Bunt interacted and communicated with them and how she dealt with her frustration with the class. (Id., Page ID# 917, 932.)

c.  On March 14, 2021, Ms. Bunt emailed Ms. Christmas a 13-page, single-spaced rebuttal letter dated March 12, 2021 where she addressed the complaints that formed the basis for her exclusion from some of the CMCSS schools. (Id., Page ID# 917, 934-946). This correspondence from Ms. Bunt contradicts her assertion that she was kept out of the investigative process. Ms. Christmas responded to Ms. Bunt by confirming receipt of her letter and assured

her that while she had been excluded at KHS, she remained in good standing with the substitute program. (Id, Page ID# 917, 947).

In her capacity as CMCSS HR Coordinator, Ms. Christmas provided CHRO Johnson with the emails she received from the relevant principals who requested Ms. Bunt's exclusion from their schools. (Id., Page ID# 917-918, 948-950).  As previously discussed, CHRO Johnson then conducted an investigation regarding Ms. Bunt's exclusion from KHS and WCHS and found that there was no evidence of retaliation against Ms. Bunt. This finding of non-retaliation was later reviewed and affirmed by Director Huff following an appeal of the decision by Ms. Bunt.

## SUMMARY OF THE ARGUMENT

Ms. Bunt's speculations, assumptions, flights of fancy, hunches, intuitions, and conspiratorial theories at the summary judgment stage were legally insufficient to establish a *prima facie* case of retaliation against

CMCSS. The district court was, therefore, correct in granting summary judgment in favor of CMCSS.

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment *de novo*, drawing all reasonable inferences and viewing the evidence in the light most favorable to the non-movant to determine whether there is a genuine issue of material fact. *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). A genuine dispute exists when the non-movant presents significant probative evidence on which a reasonable jury could return a verdict for the non-movant. *See EEOC v. Ford Motor Co.*, 782 F.3d 753, 760-61 (6th Cir. 2015). "Determining whether a genuine dispute exists of course requires a fact intensive, case-by-case analysis. But it equally requires looking to case law for guidance and addressing all the facts in the record - including those that uniformly cut against the [non-movant]." *Id.* at 761 (internal citation omitted). The ultimate determination is "whether the evidence presents sufficient disagreement to require submission to a jury

or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52(1986).

## ARGUMENT

The district court did not commit reversible error when it granted summary judgment in favor of CMCSS based on its finding that Ms. Bunt failed to establish a *prima facie* case of retaliation against CMCSS.

Ms. Bunt conceded that she did not possess any direct evidence of retaliation by CMCSS, and that she relies instead on indirect or circumstantial evidence. (Bunt Dep., R. 142-1, Page ID# 588). Claims for retaliation under Title VII are assessed using the three-step *McDonnell Douglas* burden shifting framework when there is no direct evidence of retaliation. *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987).  The first step of this framework requires that Ms. Bunt establish a *prima facie* case of retaliation.  As the district court correctly found, Ms. Bunt is unable to establish a *prima facie* case of retaliation against CMCSS.

In order to establish a *prima facie* case of retaliation, Ms. Bunt must establish that: (1) she engaged in a protected activity; (2) the person who allegedly retaliated against her knew of the exercise of this protected activity; (3) defendant subjected Ms. Bunt to a materially adverse employment action; and (4) there is a causal connection between the adverse employment action and the protected activity. *Ladd v. Grand Trunk W.R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009).

CMCSS does not dispute that Ms. Bunt engaged in a protected activity when she filed her EEOC charges against CMCSS. However, Ms. Bunt is unable to establish the other three elements to make a *prima facie* case. For this reason, Ms. Bunt's claim of retaliation against CMCSS fails. The district court was, therefore, correct in granting summary judgment in favor of CMCSS.

**1.   The grant of summary judgment in favor of CMCSS was proper because Ms. Bunt failed to prove the "knowledge" element necessary to make a *prima facie* case case of retaliation against CMCSS.**

A "necessary element of the *prima facie* case is that the official committing the adverse action have knowledge of the protected activities." *Brown v. City of Franklin*, 430 Fed. Appx. 382, 386 (6th Cir. 2011).  An individual cannot retaliate against someone for engaging in a protected activity unless he knew of the protected activity. *See Scott v. Eastman Chem. Co.,* 275 Fed. Appx. 466, 482 (6th Cir. 2008).  "[W]here the decision maker denies having knowledge of the protected activity, the plaintiff must do more than offer only conspiratorial theories or flights of fancy, speculations, hunches, intuitions or rumors." *Cain v. Potter,* No. 1:05CV2378, 2006 WL 3146435 at *4 (N.D. Ohio Oct. 31, 2006).  Summary judgment is appropriate, then, when the plaintiff fails to "produce any direct or circumstantial evidence from which a reasonable juror could infer that [defendants] knew or were even aware of his protected activity." *Mulhall v. Ashcroft*, 287 F.3d 543 (2002). *See e.g. Johnson v. United States Dept. of Health & Human Services*, 30 F.3d 45 (6th Cir. 1994)(granting summary

judgment to defendant on plaintiff's retaliation claim when the supervisory staff responsible for making promotion decisions had no knowledge of plaintiff's EEOC complaint).

Ms. Bunt accused various principals/administrators of CMCSS of engaging in retaliatory conduct against her. A number of these individuals identified by Ms. Bunt have denied knowledge of her EEOC complaint when the alleged retaliatory conduct occurred.  These individuals were as follows:

- Mr. Tharpe, who conducted the principal observation visit on Ms. Bunt in 2018, denied knowledge of the EEOC charge that Ms. Bunt had filed against CMCSS. (Tharpe Declaration, R. 42-12, Page ID# 764-765). Notably, Mr. Tharpe provided a positive evaluation report on Ms. Bunt after his visit. (Id., Page ID# 765-767). This belies any claim by Ms. Bunt of Mr. Tharpe's retaliatory animus.

- Mr. Smith, who Ms. Bunt accused of threatening and intimidating her, explicitly denied knowledge of any

type of EEOC charge that Ms. Bunt had filed against
CMCSS. (Smith Declaration, R. 42-13, Page ID# 768-
769).

- Mr. Parker, who Ms. Bunt accused of excluding her
  from substitute teaching positions at KHS, did not
  know that Ms. Bunt had filed EEOC charges against
  CMCSS. He only knew about the EEOC charges in June
  2023 when counsel for CMCSS requested his declaration
  in support of its motion for summary judgment.
  (Parker Declaration, R. 42-9, Page ID# 726-727).

- Mr. Bailey, who Ms. Bunt accused of excluding her
  from substitute teaching positions at KHS, did not
  know that Ms. Bunt had filed EEOC charges against
  CMCSS. He only knew about the EEOC charges in June
  2023 when counsel for CMCSS requested his declaration
  in support of its summary judgment motion.  (Bailey
  Declaration, R. 42-6, Page ID# 707-709).

- Mr. Slight, who Ms. Bunt accused of denying her an
  interview for a teaching position, did not know that
  Ms. Bunt had filed an EEOC charge against CMCSS when

he interviewed her for the CE Teacher position and when he made his hiring decision for the position. (Slight Declaration, R. 42-10, Page ID# 729, 731).

- Ms. Luna-Vedder, who Ms. Bunt accused of denying her an interview for the CTE position, denied any knowledge of the EEOC charge that Ms. Bunt had filed against CMCSS at the time she made the decision to hire for the CTE position. (Luna-Vedder Declaration, R. 42-7, Page ID# 712).

- Ms. Johnson, who investigated Ms. Bunt's claims that she was excluded at KHS and WCHS in retaliation for the EEOC charges she had filed against CMCSS, found that none of the principals at KHS and WCS knew about the EEOC charges Ms. Bunt had filed when they decided not to allow Ms. Bunt to provide substitute teaching at their respective schools. (Johnson Declaration, R. 42-8, Page ID# 714).

- Ms. Izatt, who Ms. Bunt accused of excluding her from substitute teaching at MCMS, denied knowledge of any retaliation against Ms. Bunt by her or by anyone else

at CMCSS. (Izatt Declaration, R. 42-11, Page ID# 738).

In addition to the explicit denials by the foregoing principals/administrators of their knowledge of Ms. Bunt's EEOC charges against CMCSS are Ms. Bunt's <u>own admissions</u> that her case is built entirely on assumptions, and she does not have any facts, information, or knowledge to support her allegations against the individuals she identified as having retaliated against her. Specifically:

- Ms. Bunt admitted that she had no facts, information, or knowledge that any of the principals who performed the observation visits that she complained about knew that she had filed an EEOC charge against CMCSS. (Bunt Dep., R. 42-1, Page ID# 513).

- She admitted that her allegations that Mr. Tharpe's observation visit was in retaliation for the EEOC charges she had filed and that his positive evaluation report on her was intended as some kind of cover-up for his retaliatory animus were mere

conjectures or assumptions on her part. (Id., R. 42-1, Page ID# 482).

- She admitted that she "does not have anything" to prove that Mr. Smith, who she accused of threatening and intimidating her, knew that she had filed an EEOC charge against CMCSS. (Id., R. 42-1, Page ID# 504). She conceded that her allegation that Mr. Smith knew about her EEOC charge was based entirely on her own assumptions. (Id.).

- She admitted that she did not have any kind of documentation to prove her allegation that she was denied interviews for the three positions she applied for with CMCSS because someone from CMCSS knew that she had filed an EEOC charge against CMCSS in January 2018. (Id., R. 42-1, Page ID# 519-520).

- She admitted that she had no facts, information, or knowledge to support her allegation that Ms. Aimee Hoffman excluded her from NEMS because Ms. Hoffman knew about her EEOC charge against CMCSS. (Id., R. 42-1, Page ID# 543). In fact, Ms. Bunt's allegation

that Ms. Hoffman excluded her is patently false.  Ms. Hoffman, a fellow teacher, had no authority to exclude Ms. Bunt.  The undisputed proof in the record is that the principals have the sole authority and discretion to decide who should be allowed to fill substitute teaching positions at their schools.

- She admitted that she had no facts, information, or knowledge to support her allegation that Ms. Izatt excluded her from MCMS because Ms. Izatt knew about her EEOC charge against CMCSS. (Id). Again, this allegation was pure speculation by Ms. Bunt as Ms. Izatt was not the principal of MCMS and had no authority to exclude Ms. Bunt.

- She admitted that she had no facts, information, or knowledge to support her allegation that Mr. Parker and Mr. Bailey excluded her from KHS in retaliation for her filing an EEOC charge against CMCSS. (Id., R 42-1, Page ID# 548, 571).

- She admitted that she had no facts, information, or knowledge to support her allegation that Mr. Slight

and Ms. Damaris Last-Luna excluded her from WCHS in retaliation for the EEOC charge she filed against CMCSS. (Id.).

- She admitted that no one from CMCSS told her that she was denied a long-term substitute position because she had filed an EEOC charge against CMCSS. (Id., R. 42-1, Page ID# 527). She further admitted that she had not seen any e-mails that prove her assumption that she was denied long-term substitute positions in retaliation for filing an EEOC charge against CMCSS. (Id).

In summary, all that Ms. Bunt could offer at the summary judgment stage to show knowledge by the individuals that she had accused of retaliating against her were her speculations, assumptions, and "conspiratorial theories, and not the specific facts required under Rule 56." *Mulhall*, 287 F.3d at 552 (citing *Visser v. Packer Eng'g Assocs. Inc.,* 924 F.2d 655, 659 (7th Cir. 1991)(en banc)(finding summary judgment appropriate where inferences were akin to "flights of

fancy, speculations, hunches, intuitions, or rumors about matter remote from experience"). Ms. Bunt failed to produce any evidence at the summary judgment stage, whether direct or circumstantial, to rebut the denials of the relevant decision makers regarding their knowledge of Ms. Bunt's protected activity. Instead, she only offered "conspiratorial theories," and not "specific facts." *See Mulhall,* 287 F.3d at 552. As there is no genuine factual dispute regarding the lack of knowledge by the relevant decision makers of Ms. Bunt's protected activity, the district court was correct in finding that Ms. Bunt failed to prove the knowledge element required to make a *prima facie* case of retaliation against CMCSS.

**2. The grant of summary judgment in favor of CMCSS was proper because Ms. Bunt failed to prove the "injury or harm" element necessary to make a *prima facie* case of retaliation against CMCSS.**

Ms. Bunt, as part of her *prima facie* case of retaliation, was required to establish that she was subjected to an adverse employment action. This requires

that Ms. Bunt show "a materially adverse change in the terms and conditions of [her] employment." *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999). Further, it requires that she show that she actually suffered an injury or harm from the alleged retaliation. (*See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67,126 S.Ct. 2405, 165 L.Ed.2d 345(2006)("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.") Ms. Bunt failed on this prong as well. Because an adverse employment action must be "materially" adverse, "it is important to separate significant from trivial harms." Id., at 68. An action is only adverse if it might dissuade a reasonable worker from making or supporting a charge of discrimination. *Id.* The standard is objective and does not protect a plaintiff from trivial harms, such as petty slights or minor annoyances which are not likely to deter victims from complaining to the EEOC. *Id.* "Not everything that makes an employee unhappy is an actionable adverse action." *Stephens v.*

*Erickson*, 569 F.3d 779, 790 (7th Cir. 2009).  This was exactly what happened in this lawsuit.  Ms. Bunt was obviously unhappy with her employment at CMCSS, but she had not shown any proof of any actionable adverse action against her by CMCSS.

In *Crady v. Liberty National Bank & Trust Co.of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993), the Seventh Circuit explained the requirements for establishing a materially adverse employment action in the context of an age discrimination case: "[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities.  A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage of salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."  The Sixth Circuit adopted the *Crady* factors

in *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir. 1996).

In Ms. Bunt's case, it is undisputed that she continues to be employed as a substitute teacher at CMCSS. (Bunt Dep., R. 42-1, Page ID# 466-467). Ms. Bunt even proudly stated at her deposition on May 31, 2023 that she had been recognized at the end of the 2022-2023 school year as one of 11 people who had been substitute teaching the longest at CMCSS. (Id.,R. 42-1, Page ID# 467-468). None of the adverse changes contemplated by the Court in *Crady* were at play in her case. Ms. Bunt had not been terminated. She had not been demoted. Her title/position as a substitute teacher remains unchanged. Her responsibilities as a substitute teacher had not been diminished. In other words, there had been no change, adverse or otherwise, in her employment status at CMCSS. She was hired as a substitute teacher at CMCSS in 2014 and she continues to be one to this date. While it is true that the principals at KHS and WCHS, in the exercise of their discretion, decided not to allow Ms. Bunt to do

substitute teaching at their schools because of negative issues/complaints with how Ms. Bunt interacted with their students, Ms. Bunt continues to be available to accept open substitute teaching assignments in other CMCSS schools. (Parker Declaration, R. 42-19, Page ID# 727; Bailey Declaration, R. 42-6, Page ID# 708; Johnson Declaration, R. 42-8, Page ID# 722). Ms. Bunt also returned to substitute teaching positions at NEMS, where she was previously excluded. (Christmas Declaration, R. 42-5, Page ID# 703). In fact, Ms. Bunt worked as a substitute teacher at CMCSS schools at various time periods during the 2022-2023 school year beginning on August 16, 2022 through May 19, 2023. (Bunt's Substitute Work History Report for School Year 2022-2023, R. 42-3, Page ID# 658-691). Thus, Ms. Bunt could not credibly argue that CMCSS retaliated against her when the record shows that she continued to receive substitute teaching assignments through the end of the most recent school year. It is clear, therefore, that Ms. Bunt had not been

subjected to any adverse employment action by CMCSS to satisfy the second *prima facie* prong.

It also bears stressing that despite all her complaints that she was subjected to retaliatory conduct by CMCSS principals/administrators, Ms. Bunt had not been deterred from complaining to the EEOC, the courts, or to CMCSS administrators about her allegations of discrimination and retaliation by CMCSS. Existing case law makes it clear that an action is materially adverse if it might dissuade a reasonable worker from making or supporting a charge of discrimination. Ms. Bunt had not been dissuaded at all from making her complaints of discrimination and retaliation against CMCSS. To the contrary, she has filed multiple EEOC complaints against CMCSS alleging age discrimination and retaliation from 2018 through 2021. She, therefore, could not credibly claim that the actions by CMCSS that she complains about in this lawsuit, were materially adverse to her. Ms. Bunt may be unhappy with her employment at CMCSS, but not everything that makes her unhappy is an actionable

adverse action.  As there is no genuine factual dispute that Ms. Bunt suffered no harm or injury from the retaliatory conduct she complains about in this lawsuit, the district court was correct in finding that Ms. Bunt failed to prove the adverse action element required to make a *prima facie* case of retaliation against CMCSS.

### 3.  The grant of summary judgment in favor of CMCSS was proper because Ms. Bunt failed to prove the "causation" element necessary to make a *prima facie* case of retaliation against CMCSS.

To establish a causal connection between the alleged adverse action and her protected activity, Ms. Bunt must "proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997).  Ms. Bunt is required to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity.  *See id.*  Where the employer's decision makers have no knowledge of the protected activity, it is impossible to

prove a causal connection between such activity and an adverse employment decision. *Johnson,* 30 F.3d at 47; *Mulhall* 287 F.3d at 554.

It is axiomatic that where the individual involved in the decision at issue had no knowledge of the protected activity, there can be no retaliation for engaging in that activity. *See e.g. Cutcliff v. Wright Sate University*, 3:17-cv-222, 2019 WL 316909, at *13 (S.D. Ohio, Jan. 24, 2019)(finding that there is no causal connection between protected activity and adverse employment action where the decision maker had no knowledge of any protected activity). It is necessary, therefore, for Ms. Bunt to first show that the person(s) making the decisions about which she complains *knew* that she had engaged in a protected activity. If, but only if, that knowledge is proven, Ms. Bunt must also prove that there was a causal connection between the protected activity and the action about which she complains. *Polk Yellow Freight Sys., Inc.,* 876 F.2d 527, 531 (6th Cir. 1989).

It is undisputed that the CMCSS decision makers that Ms. Bunt had accused of engaging in retaliatory conduct against her had no knowledge of Ms. Bunt's protected activity. Ms. Bunt had failed to produce any evidence, direct or circumstantial, to rebut the denials by the relevant decision makers of their knowledge of Ms. Bunt's protected activity. By her own admission, Ms. Bunt had no facts, information, or knowledge to support her assumptions that these decision makers knew of her EEOC charges against CMCSS and that they engaged in retaliatory conduct towards her because of the EEOC charges she had filed against CMCSS. Since the filing of her complaint, Ms. Bunt has not even attempted to substantiate any of her allegations against these individuals in this matter. She has not served any written discovery on CMCSS. She has not taken a single deposition of anyone, let alone someone from CMCSS. Instead, she only offered conspiratorial theories, speculations, and not specific facts to rebut the denials of these decision makers. Because Ms. Bunt had not shown

at the summary judgment stage that there is a genuine factual dispute about the lack of knowledge by the relevant decision makers of her protected activity, she could not prove a causal connection between her protected activity and the adverse action that she alleged was taken against her by these decision makers.

In her brief before this Court, Ms. Bunt self-servingly claims that her evidence at the summary judgment stage of "temporal connection plus the "lack of investigation" were "enough to establish the causation prong of a *prima facie* case of retaliation." (Appellant Brief, Doc. 14, Page ID#28). The problem with Ms. Bunt's assertion is that her claim of "lack of investigation", simply finds no support in the record in this matter. It is undisputed that CMCSS CHRO Jeanine Johnson investigated Ms. Bunt's claim of retaliation. (See Johnson Declaration, R. 42-8, Page ID# 713-725). It is also undisputed that CMCSS's Director of Schools Angela Huff conducted an independent review of the no retaliation decision by CHRO Johnson  following an appeal

of that decision by Ms. Bunt. (Huff Declaration, R.42-4, Page ID# 692-701). Additionally, Ms. Izatt, who was the Classified Employment and Substitute Teacher Coordinator/Human Resource Coordinator during the relevant period, also conducted an investigation into the many complaints of retaliatory conduct that Ms. Bunt has alleged in this lawsuit. (Izatt Declaration, R.42-11, Page ID# 732-763). Contrary to Ms. Bunt's assertion, she cannot not show "lack of investigation" as an indicia of CMCSS's retaliatory conduct. At best, all Ms. Bunt could show at the summary judgment stage was temporal proximity, which alone is insufficient to establish the causation element of her *prima facie* case of retaliation. Temporal proximity between the protected activity and the alleged adverse employment action is generally insufficient to establish a causal connection, and instead "must be coupled with other indicia of retaliatory conduct." *Eyster v. Metro Nashville Airport Auth.*, 479 F.Supp. 3d 706, 719-720 (M.D. Tenn. 2020). Ms. Bunt's claim of "lack of investigation" is totally

devoid of any factual basis and, as such, she has not offered any other indicia of retaliatory conduct by CMCSS. Contrary to her assertion, she has not produced any evidence of temporal connection or a lack of investigation at the summary judgment stage.

In summary, Ms. Bunt's retaliation claim against CMCSS suffers from twin failures – she cannot prove knowledge by the decision makers of her protected activity and she cannot prove any causal connection between the alleged retaliatory conduct she complains about and her protected activity. As there is no genuine factual dispute regarding the lack of causal connection between Ms. Bunt's protected activity and the alleged adverse employment actions she complains about in this lawsuit, the district court was correct in finding that Ms. Bunt failed to prove the "causation" element necessary to make a *prima facie* case of retaliation.

## CONCLUSION

The facts construed in the light most favorable to Ms. Bunt support the district court's conclusion that Ms.

Bunt failed to establish a *prima facie* case of retaliation against CMCSS. Ms. Bunt's speculations, assumptions, flights of fancy, hunches, intuitions, and conspiratorial theories were insufficient to carry her retaliation claim against CMCSS. The district court correctly found that there were no disputed issues of material fact as regards Ms. Bunt's claim of retaliatory conduct by CMCSS, and CMCSS was entitled to judgment as a matter of law. For this reason, CMCSS respectfully requests this Court to affirm the district court's grant of summary judgment to CMCSS.

/s/ Stephen W. Elliott
Stephen W. Elliott, BPR #20062
HOWELL & FISHER, PLLC
3310 West End Ave, Suite 550
Nashville, TN 37203
Ph. 615/921-5224
selliott@howell-fisher.com
Attorney for Defendant-Appellee

## CERTIFICATE OF COMPLIANCE

I certify that this appellee brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,548 words.  I further certify that this brief complies with the typeface requirements of Fed.R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Courier New at 14 point.

/s/    Stephen    W.    Elliott
Stephen W. Elliott

## CERTIFICATE OF SERVICE

I certify that on April 23, 2024, the foregoing was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Stephen W. Elliott
Stephen W. Elliott

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

| Record Entry Number/ Page ID# | Description of Document |
|---|---|
| 1<br>Page ID# 1-47 | Complaint |
| 1-4<br>Page ID# 67-80 | Kathleen Bunt's EEOC Charges |
| 20<br>Page ID# 333-334 | Order on Motion to Dismiss |
| 39<br>Page ID# 386-387 | CMCSS's Motion for Summary Judgment |
| 40<br>Page ID# 388-410 | Memorandum of Law in Support of Motion for Summary Judgment |
| 42-1<br>Page ID# 432-632 | Deposition of Kathleen Bunt |
| 42-2<br>Page ID# 633-657 | Kathleen Bunt's Discovery Responses |
| 42-3<br>Page ID# 658-691 | Kathleen Bunt's Substitute Work History (2022-2023) |
| 42-4<br>Page ID# 692-701 | Angela Huff Declaration |
| 42-5<br>Page ID# 702-706 | Erica Christmas Declaration dated 6/29/2023 |
| 42-6<br>Page ID# 707-709 | James Bailey Declaration |
| 42-7<br>Page ID# 710-712 | J. Luna-Vedder Declaration |
| 42-8<br>Page ID# 713-724 | Jeanine Johnson Declaration |
| 42-9<br>Page ID# 726-729 | Keith Parker Declaration |
| 42-10<br>Page ID# 729-731 | Matthew Slight Declaration |
| 42-11<br>Page ID# 732-763 | Melissa Izatt Declaration |
| 42-12<br>Page ID# 764-767 | Michael Tharpe Declaration |
| 42-12 | Shane Smith Declaration |

| | |
|---|---|
| Page ID# 768-772 | |
| 45<br>Page ID# 776-787 | Plaintiff's Response in Opposition to CMCSS's Motion for Summary Judgment |
| 45-1<br>Page ID # 788-818 | Plaintiff's Responses to Statement of Material Undisputed Facts |
| 45-2<br>Page ID# 819-897 | Excerpts of K. Bunt's Document Production |
| 45-3<br>Page ID# 898-901 | Kathleen Bunt Declaration |
| 46-1<br>Page ID# 914-951 | Erica Christmas Declaration dated 8/9/2023 |
| 47<br>Page ID# 952-993 | Memorandum on Motion for Summary Judgment |
| 48<br>Page ID# 994 | Order on Motion for Summary Judgment |
| 49<br>Page ID# 995 | Entry of Judgment |
| 50<br>Page ID# 996 | Notice of Appeal |